# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**TRACY LEVON HARRIS, #R9409**                                **PLAINTIFF**

**VS.**                                      **CIVIL ACTION NO: 4:09-CV-78-LRA**

**BART GRIMES, ET AL**                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

THIS CAUSE is before the Court on the Motion for Summary Judgment filed by Defendants Willie Bookert, Bart Grimes, and Lanorris Ward[1] requesting that the Complaint filed against them by Tracy Levon Harris, Plaintiff, be dismissed with prejudice. The Court has considered the pleadings, Harris's sworn testimony given at the omnibus hearing,[2] and the applicable law. This review compels the Court to find that Defendants are entitled to a judgment at law, as there are no genuine issues of material fact. The Motion for Summary Judgment shall be granted.

## FACTS

Jurisdiction of this case is based upon 42 U.S.C. § 1983. Harris's sworn testimony at the omnibus hearing, in conjunction with the written evidence submitted by Defendants,[3] reveal the following relevant facts. Harris was incarcerated as a convicted felon in the custody of the Mississippi Department of Corrections ["MDOC"] at the East Mississippi Correctional Facility ["EMCF"] in Meridian, Mississippi, having been transferred there in October 2008.

---

[1] ECF No. 39, filed April 24, 2012. Although Plaintiff also named Major Young as a Defendant, he no longer is employed at EMCF and was never served with process. The claims against this unserved Defendant have also been considered.

[2] ECF No. 39-1, Transcript of omnibus hearing conducted 2/8/2010, Exhibit 1.

[3] Defendants' Exhibit 2 to the motion is the Affidavit of Warden of Security at EMCF Bart Grimes, ECF No. 39-2.

Harris explained his allegations under oath at the omnibus hearing. He contends that these Defendants failed to protect him from other inmates while he was housed there. The only relief he sought in his Complaint is quoted from paragraph IV, p. 4: "Injunction Relief to correct Policy on protecting safety of inmates."

Harris testified that he was jumped on by his cellmate, Stephanie Williams, on December 9, 2008. Harris and Williams were housed together for several months before the assault and had only had verbal arguments before that time. Harris had requested that Williams be moved away from him, and Major Young moved him. However, Major Young failed to correct the move on the roster, and Williams was transferred back to Harris's cell. Soon after, the assault occurred. Plaintiff described the event as follows:

> Well, one morning I got up ... and I decided ...I'd wash my pants out ... because I didn't get a chance to catch the laundry. ... We had just ... come back in. So he laid down. So by the time he laid down, I started washing my pants out and stuff like that. And he told me that if I didn't stop washing or something, he'd do such and such and such. ... So I asked him ... Well, why is you want to get ... all out of hand with this thing? You just could have come to me like a man ...instead of just ... like, you know, just want to fight or something.
>
> So he jump up....At the time I wasn't issued no tennis shoes or nothing like that. So I only had shower shoes on. He jumped up and put on some boots.... And he going to grab me....
>
> I tried to defend myself ... but I doing mostly sliding. But, you know, he caught me by the head and he had bumped my head into the sink, corner of the sink. You know, it wasn't really bad. It was a little spot. You know what I'm saying? It broke the skin and stuff like that.
>
> So then I told him, I said, Well, look, man, I said, just go on...because I'm really too old for this. I ain't no child or something like that. So I said, I tell you what I'm going to do. I'm just going to get out of the cell with you, like that there. ... So it had kind of cooled down then at the time.
>
> So an officer come on the zone. I tried to get the officer's attention.... The officer really wasn't paying no attention. So, boom, I end up having to set a fire. I had — I'm not going to lie. I had to set a fire —do you understand

2

> me? – in order to get some type of attention up there where I could be moved out of the cell....

ECF No. 39-1, pp. 5-7.

According to Harris, he was then moved from Williams within an hour. He described his injuries from the assault to the Court as follows:

> And he was really trying to ram my head against the sink. But, like I said, I had ahold to it. So I stopped it from really just hitting it real hard.... So it just pecked it in a corner of it right there, but the little —it bled a little bit, but it really wasn't nothing too serious.
> ...
> Well, I had a scratch from the wall because, you know, they got like an asphalt wall like it didn't have no paint. So my arm got scratched up a little bit, you know. But, like I said, it wasn't really no major...

ECF No, 39-1, p. 9.

It is unclear from Harris's testimony and/or the Complaint as to whether or not he actually requested to be moved from Williams **before** the assault or whether his request was made **after** the assault.

As to Defendant Warden Grimes, Harris testified that he had walked up to Grimes and told him that he and his "rack partner" could not get along, and that he had been ignored by other employees to whom he had complained. Although Defendant Grimes told him he would check into it, he never did. This was before the assault.

As to Defendant Major Young, who has never been served with process, Harris testified that he was the one who had Williams moved out of Harris's cell. But, he failed to make sure the roster was changed. So Williams was moved back in with Harris.

As to Defendant Ward, Harris testified that he had explained about the roster mix-up to Ward and told him that he was not comfortable with Williams back in the cell with him. Ignoring this, Defendant Ward put Williams back in the cell with Harris.

3

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The substantive law establishes those elements on which a plaintiff bears the burden of proof at trial; only facts relevant to those elements of proof are considered for summary judgment purposes. *Id*. at 322. There is a genuine factual dispute between the parties only "when a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986).

## LEGAL ANALYSIS

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). To establish a failure-to-protect claim under section 1983, Plaintiff must show that he is/was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). Further, to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Newton*, 133 F.3d at 308 (quoting *Farmer*, 511 U.S. at 837). Whether a prison official had the

requisite knowledge of a substantial risk is a question of fact. *Neals*, 59 F.3d at 533. Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Cnty. Comm'rs of Bryan Cnty v. Brown*, 530 U.S. 397, 410 (1997).

Defendant Bart Grimes has submitted an Affidavit which has not been rebutted by Harris. ECF No. 39-2, Exhibit "2" to Motion to Dismiss. According to Grimes, he was the Warden for Security at the EMCF and had supervisory responsibility for the security of EMCF. He had an extensive subordinate staff who were involved in the day-to-day application of EMCF policies in the security, direct care and handling of the EMCF's prisoners. According to Grimes, a complaint from one inmate that he was not getting along with a roommate and wanted to be moved— would not trigger a move to another cell within the facility under EMCF policies. Grimes asserted that he had no prior knowledge that Williams posed a risk to Plaintiff, or wished to harm him, nor did he know of any other EMCF staff member who knew that.

As stated, Harris has a constitutional right to be safe while in MDOC custody, and prison officials have a duty under the Eighth Amendment to protect him from violence from other inmates. *Farmer*, 511 U.S. at 833. However, "[n]ot every injury by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. To state a constitutional case against these Defendants, Harris must plead or articulate enough specific facts, not conclusory allegations,[4] to show that they were aware that Harris faced a "substantial risk of serious harm" from the unnamed inmate. He has failed to do so.

---

[4] *See Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc) (§1983 plaintiff must plead specific facts, not "conclusory allegations").

A prison obviously houses many violent offenders.[5] According to Harris's own testimony, he had no prior knowledge that his roommate was actually going to injure him; they simply were not getting along and had had "words." Harris is unclear as to whether or not he actually told these Defendants about his concerns **before** the physical altercation. No liability could be found unless each Defendant was aware of a specific risk of serious danger to Harris and he failed to intervene. These Defendants were not personally responsible for the decision to house Turner with Williams.

Harris has failed to assert facts which would show that he ever faced a substantial risk of serious harm. He was not seriously injured, according to his own testimony, as his wounds were superficial. Accepting all of Harris's testimony as true, he has not set forth facts which could establish a constitutional claim. His general allegations regarding Williams are not enough to state a claim that he was ever in actual danger. Even if the allegations were sufficient, his testimony still does not support a finding that any Defendant acted with "deliberate indifference" toward his safety. "Deliberate indifference" is a question of fact, and may be proved from circumstantial evidence. *Newton*, 133 F.3d at 308. However, these Defendants must have been aware of facts from which the inference could be drawn that a substantial risk of harm to Harris existed, and each of them must also have actually drawn the inference. In this case, Harris's complaints about he and his roommate not getting along were simply not enough to cause these Defendants to infer that Harris was at risk for serious harm.

The Court concludes that there are no genuine issues of material fact in analyzing the claims against these Defendants, and they are entitled to a judgment at law. Harris's

---

[5] As the Court noted in *Newton*, 133 F.3d at 307, Parchman is "a dangerous place," with 80% of its 6,000 inmates being "violent offenders." The Court still found that an officer was not aware that "a substantial risk" of harm existed simply because a prisoner reported a threat by another inmate and asked to be moved; threats are part of the penitentiary's daily fare. A similar analysis could be applied to EMCF.

contention that the attack occurred because these Defendants failed to move Williams is at most a claim of negligence, and negligence cannot form the basis of a § 1983 claim. *Daniel v. Williams*, 474 U.S. 327 (1986) (negligent acts of official do not amount to deprivation of due process).

Additionally, the Court notes that the only relief Harris seeks in the Complaint is injunctive in nature: he requests that the policy for protecting safety be corrected. Although Harris has not notified the Court of an address change, the MDOC website indicates that he was transferred to the Marshall County Correctional Facility in Holly Springs, Mississippi, on April 3, 2012. His claims regarding the safety policies at EMCF are now moot, and his Complaint is also dismissed on this basis.

## **CONCLUSION**

The Court finds that there are no genuine issues as to any material fact in this case regarding Harris's claims that these Defendants are liable to him for the injuries he sustained in the attack by his cellmate. Accordingly, Defendants are entitled to a judgment at law, and the Motion for Summary Judgment [ECF No. 39] is hereby granted. Judgment as a matter of law under Rule 56(c) of the Federal Rules of Civil Procedure is hereby entered in favor of all Defendants; Final Judgment shall be entered on this date.

IT IS FURTHER ORDERED that the Complaint is dismissed with prejudice.

SO ORDERED, this the 17th day of July, 2012.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE

7